# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MS. ALIA SALEM AL-SABAH
The State of Kuwait
Qurtaba Area
Block: 1
Street: 1
Home: 2

          Plaintiff,

    v.

JEAN AGBODJOGBE
103 Mount Wilson Lane
Pikesville, Maryland 21208

NANDI A. SCOTT
103 Mount Wilson Lane
Pikesville, Maryland 21208

N&A KITCHEN, LLC
306 N. Howard St.
Baltimore, Maryland 21201
Serve on Resident Agent:
Jean Agbodjogbe
306 N. Howard St.
Baltimore, Maryland 21201

N&A KITCHEN II, LLC
5722 York Road
Baltimore, Maryland 21212
Serve on Resident Agent:
Jean Agbodjogbe
5722 York Road
Baltimore, Maryland 21212

5722 YORK ROAD, LLC
308 N. Howard St.

Civil Action No. 1:17-cv-730

Baltimore, Maryland 21201
Serve on Resident Agent:
Jean Agbodjogbe
308 N. Howard St.
Baltimore, Maryland 21201

9 JEWELS, LLC
308 N. Howard St.
Baltimore, Maryland 21201
Serve on Resident Agent:
Jean Agbodjogbe
308 N. Howard St.
Baltimore, Maryland 21201

-and-

ASA FOUNDATION, INC.
310 N. Howard St.
Baltimore, Maryland 21201
Serve on Resident Agent:
Robert H. Geis, Esq.
Miles & Stockbridge, P.C.
1 West Pennsylvania Ave., Suite 900
Towson, Maryland 21204

Defendants.

## COMPLAINT

Plaintiff, Alia Salem Al-Sabah ("Ms. Al-Sabah"), by counsel, for her Complaint against

the defendants, Jean Agbodjogbe ("Mr. Agbodjogbe"), Nandi A. Scott ("Ms. Scott"), N&A

Kitchen, LLC ("N&A Kitchen"); 5722 York Road, LLC ("York Road"), 9 Jewels, LLC ("9

Jewels"), and ASA Foundation, Inc. ("ASA Foundation"), states as follows:

## INTRODUCTION

1.      This action arises from a scheme orchestrated by Mr. Agbodjogbe to misappropriate millions of dollars of funds entrusted to him by Ms. Al-Sabah.  The two met when Ms. Al-Sabah purchased food at Mr. Agbodjogbe's Baltimore-area restaurant as a donation to a local Mosque that had its kitchen destroyed by a fire.  After gaining Ms. Al-Sabah's trust and friendship, Mr. Agbodjogbe asserted that he had the wherewithal and ability to assist Ms. Al-Sabah identify personal investment opportunities, form legal entities, and establish a charity.   He then exploited Ms. Al-Sabah's reliance to redirect millions of dollars intended for these pursuits to his own benefit.  Mr. Agbodjogbe improperly used Ms. Al-Sabah's money to purchase investment properties in Baltimore and a Fifth Avenue condominium in New York City through entities that he controlled.  He also used Ms. Al-Sabah's money to purchase a personal residence in his own name.  Moreover, he absconded with funds intended to make improvements to the investment properties and secured mortgage loans of nearly $2 million on these same properties. In all Mr. Agbodjogbe and his co-conspirator(s) defrauded Ms. Al-Sabah out of nearly $6 million.

## PARTIES

2.      Ms. Al-Sabah is a citizen and resident of Kuwait.

3.      On information and belief, Mr. Agbodjogbe is a citizen of Maryland and resides at 103 Mount Wilson Lane, Pikesville, Maryland 21208.

4.      Ms. Scott is a citizen of Maryland and resides at 103 Mount Wilson Lane, Pikesville, Maryland 21208.

5.      N&A Kitchen is a limited liability company with its principal place of business in Maryland.  Upon information and belief, the sole member of N&A Kitchen is Mr. Agbodjogbe, a Maryland citizen.

6.      N&A Kitchen II is a limited liability company with its principal place of business in Maryland.  Upon information and belief, Mr. Agbodjogbe is the sole member of N&A Kitchen II.

7.      York Road is a limited liability company with its principal place of business in Maryland.  Upon information and belief, Mr. Agbodjogbe is the sole member of York Road.

8.      9 Jewels is a limited liability company with its principal place of business in Maryland.  Upon information and belief, and contrary to his representations to Ms. Al-Sabah, Mr. Agbodjogbe set himself up as the sole member of 9 Jewels.

9.      ASA Foundation is a corporation organized and existing under the laws of the state of Maryland with its principal place of business in Maryland.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(2) because the matter in controversy, exclusive of interest and costs, exceeds the sum of $75,000 and is between citizens of Maryland and a citizen of a foreign state (Kuwait).

11.      This Court has personal jurisdiction over the defendants pursuant to Fed. R. Civ. P. 4(k)(1)(A) because they are subject to the jurisdiction of a court of general jurisdiction in the State of Maryland.

12.      Venue is proper in the District of Maryland because a substantial part of the events giving rise to this claim occurred in this judicial district.  28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

13.     Ms. Al-Sabah is engaged in a number of charitable pursuits throughout the world. Her charitable activities include providing support for schools, medical clinics, water projects, food campaigns, and medical campaigns in Africa.  Ms. Al-Sabah has also supported charitable causes in the United States, such as providing funding for construction of an Islamic burial center and cemetery in the Denver, Colorado area.  The beneficiaries of her generosity include the poor, those without access to proper nutrition and medical treatment, and Syrian refugees.

14.     The events relevant to this case began with a simple charitable gesture by Ms. Al-Sabah that resulted in a chance encounter with Mr. Agbodjogbe.  On June 30, 2014, while in Baltimore to visit her daughter, Ms. Al-Sabah first met Mr. Agbodjogbe when she visited his restaurant, Nailah's Kitchen.  While there, she purchased $8,000.00 of Halal food as a donation to members of a nearby Mosque that recently had its kitchen destroyed by a fire.

15.     After returning to Kuwait, Ms. Al-Sabah received regular communications from Mr. Agbodjogbe confirming that the meals she purchased had been prepared and delivered as she requested.  Mr. Agbodjogbe also communicated with Ms. Al-Sabah regarding his Muslim faith, wife and children, and strong desire to do more charitable work, often referring to her as his Muslim "sister."

16.     Mr. Agbodjogbe subsequently asked Ms. Al-Sabah if she would be interested in partnering with him in his fledgling restaurant business, which would provide them a way to continue doing charitable work together.  After some discussions, Ms. Al-Sabah agreed to invest $50,000.00 in his restaurant business and $100,000.00 for a food truck in return for a fifty percent (50%) ownership interest in the restaurant business.  Under this arrangement, Ms. Al-Sabah's share of the profits from operation of the restaurant was to be donated to charity.

17.     On July 17, 2014, Mr. Agbodjogbe sent Ms. Al-Sabah an email thanking her for investing in his business.  The email stated, "I will always be transparent with you [and] that's why [I] am sending you some information about me[,] my wife and my family . . ."  Consistent with that, Mr. Agbodjogbe attached a number of personal items to the email, including photographs of his family, his driver's license, and even a personal credit card.  He further stated that he and his family were "honest Muslims" and that he wanted to "help others."

18.     A few weeks later, on August 8, 2014, Mr. Agbodjogbe sent Ms. Al-Sabah the Articles of Organization and Operating Agreement for N&A Kitchen, the new entity formed for the restaurant partnership.  The documents had been prepared by a lawyer and showed Ms. Al-Sabah as a member and fifty percent (50%) owner of N&A Kitchen.

19.     About a month later, on September 3, 2014, Mr. Agbodjogbe sent Ms. Al-Sabah copies of an agreement regarding her capital contribution to N&A Kitchen pursuant to which Mr. Agbodjogbe was to contribute the business assets of Nailah's Kitchen into the LLC and Ms. Al-Sabah was to contribute $150,000.00.  Ms. Al-Sabah executed the agreements and returned them to Mr. Agbodjogbe.

20.     In accordance with the agreements and pursuant to wire instructions provided by Mr. Agbodjogbe in late August, Ms. Al-Sabah wired $50,025.00 on September 30, 2014 and $100,000.00 on October 16, 2014 to an N&A Kitchen bank account.

21.     Throughout this time, through almost daily communication regarding their charitable activities and the restaurant, Mr. Agbodjogbe earned Ms. Al Sabah's trust and friendship.  For instance, he continued referring to her as his Muslim "sister," shared about his Muslim faith and attempts to convert his father and wife to the faith, exhibited a passion for charity work, and repeatedly declined any compensation for his efforts to assist her.  These

actions and others, along with their seemingly successful collaboration on the restaurant to further her charitable purposes, provided Ms. Al Sabah a sense of trust and common purpose with Mr. Agbodjogbe.

22.     In October 2014, however, Mr. Agbodjogbe would begin systematically exploiting Ms. Al Sabah's trust by engaging in a fraudulent scheme to misappropriate millions of dollars from her while purporting to facilitate her personal investments and charitable endeavors.

23.     Around that time, Mr. Agbodjogbe recommended that Ms. Al-Sabah invest in the redevelopment of properties in West Baltimore, in the Howard Street corridor.  He informed her that redevelopment activity was occurring in this area of the city and that the real estate market was on an upward trend.  He offered to assist her in identifying properties for purchase and completing the purchases and induced her to act quickly to take advantage of what he claimed were below market value prices.  After further discussions between the two, Ms. Al-Sabah determined that she would make personal investments in West Baltimore and use some of the income from such investments to support charitable endeavors in the Baltimore area.

24.     Because Ms. Al-Sabah wished to remain anonymous, Mr. Agbodjogbe recommended that she establish an investment entity to hold her personal investments.  To accomplish this goal, an LLC named "9 Jewels, LLC" was to be created by Mr. Agbodjogbe with Ms. Al-Sabah as the sole member for the purpose of purchasing investment properties. Additionally, the ASA Foundation was to be created at a later date so that some of the income from her personal investments could be directed to charitable activities.

25.     Between October 2014 and January 2015, Mr. Agbodjogbe proposed various investment properties for Ms. Al-Sabah to purchase through 9 Jewels, which she believed was established as an entity that she alone owned for investment purposes.  Because the properties

were in a redevelopment area, Mr. Agbodjogbe arranged for Ms. Al-Sabah to meet with Brian

Greenan, the Economic Development Officer for Baltimore Development Corporation, and tour

the properties.  Mr. Agbodjogbe further arranged for Ms. Al-Sabah to meet with Curry

Architects to review plans for rehabilitation of the properties, and to meet with an attorney

regarding the status of the various entities that had been formed to facilitate her efforts in

Baltimore.

26.     Believing, based on her discussions and agreements with Mr. Agbodjogbe, that

she was purchasing personal investment properties located at 400 North Howard Street, 327

Eutaw Street, 5722 York Road, and 306-310 North Howard Street (the "Investment Properties")

through her investment company 9 Jewels and furnishing funds for rehabilitation of those

properties, Ms. Al-Sabah wired Mr. Agbodjogbe approximately $3,022,329.53 in several

separate transactions between October 2014 and January 2015.

27.     Throughout that time, Mr. Agbodjogbe purported to keep her updated on the

status of the purchase and rehabilitation of the Investment Properties, telling her that her

properties would increase significantly in value and that they would generate substantial income.

He continued to appeal to the religious convictions underlying her charitable aims by referring to

himself as Mohammed and making numerous references to their shared faith.  He also confirmed

that he was "working on this project for [Ms. Al-Sabah]" and promised her that "anything you

need I will get accomplish[ed]."

28.     However, Mr. Agbodjogbe's reassurances and status reports regarding purchase

and rehabilitation of the Investment Properties were largely untrue and he was not in fact using

the funds as agreed to and intended by Ms. Al-Sabah.  Instead, he was engaged in a fraudulent

and deceptive scheme to misappropriate the funds for his own benefit.

29.     Specifically, Mr. Agbodjogbe caused the Investment Properties to be purchased by entities that he organized—9 Jewels, N&A Kitchen, and York Road—in which Ms. Al-Sabah, as she has come to realize, has no ownership interest at all, with the possible exception that she may hold a partial ownership interest in N&A Kitchen.  By purchasing the Investment Properties in this manner, he effectively appropriated them for his own gain by putting them out of Ms. Al-Sabah's reach.

30.     Moreover, while some improvements were made to the Investment Properties, it is believed that Mr. Agbodjogbe absconded with a significant portion of the funds provided for rehabilitation.  For instance, rehabilitation of certain Investment Properties was either not started at all or not completed in the manner agreed to by the parties.  Instead, Mr. Agbodjogbe diverted funds provided for these projects for his own benefit, such as to purchase a personal residence at 103 Mount Wilson Lane for $469,000.00.

31.     In addition to misappropriating funds provided to him by Ms. Al-Sabah to purchase and rehabilitate the Investment Properties, Mr. Agbodjogbe secured a mortgage loan of $375,000.00 in the name of 9 Jewels by pledging the 5722 York Road and 306-310 Howard Street properties as collateral.

32.     As a result, despite her total investments of over $3 million in the Investment Properties and an additional $375,000.00 in loan proceeds improperly secured by Mr. Agbodjogbe, Ms. Al-Sabah does not have any ownership interest in the Investment Properties and the promised rehabilitation was not completed and in some cases never commenced.

33.     In the midst of his scheme to misappropriate funds intended for the Investment Properties, Mr. Agbodjogbe also absconded with additional funds provided to him by Ms. Al-Sabah for other purposes.

34.     In or around July of 2015, Ms. Al-Sabah requested that Mr. Agbodjogbe assist her in completing the purchase of a condominium in New York City for family use based on his purported knowledge of the New York City real estate market because of frequent travels there for business.  On Ms. Al-Sabah's behalf, Mr. Agbodjogbe worked with a realtor in New York City to locate multiple prospective properties.  Ms. Al-Sabah reviewed information provided to her by Mr. Agbodjogbe regarding multiple prospective properties.  After viewing a condominium located at 325 Fifth Avenue in person, Ms. Al-Sabah made arrangements to have Mr. Agbodjogbe purchase the condominium through 9 Jewels, which she believed to be her wholly-owned investment company.

35.     To allow Mr. Agbodjogbe to complete the purchase on her behalf, she wired him the purchase amount of $2,110,000.00 in separate transactions on July 15, 2015 and August 6, 2015.  On August 19, 2015, Ms. Al-Sabah wired Mr. Agbodjogbe $16,390.76 to reimburse him for expenses and provide him some compensation for his assistance.

36.     Mr. Agbodjogbe completed the purchase of the condominium through 9 Jewels despite knowing that Ms. Al-Sabah had no ownership interest in the entity, thereby intentionally and deceitfully using her money to purchase the property in the name of an entity he controlled.

37.     Moreover, on or about May 26, 2016, Mr. Agbodjogbe caused N&A Kitchen to borrow $600,000.00 and further caused 9 Jewels to pledge the condominium as collateral for repayment of the loan.  On August 26, 2016, with the principal balance of the loan at $560,471.69, Mr. Agbodjogbe caused 9 Jewels to borrow an additional $639,528.31 and consolidated that loan with the previous loan, bringing the total amount of the loan and mortgage to $1.2 million.  On December 14, 2016, Mr. Agbodjogbe caused 9 Jewels to refinance the loan

again, bringing the total borrowed to $1,522,000.00 and again securing repayment of the loan with a mortgage on the condominium.

38.     Separately, in late 2015, Ms. Al-Sabah enlisted Mr. Agbodjogbe's assistance in locating property in Baltimore for an Islamic burial center and cemetery.  Ms. Al-Sabah had successfully underwritten a similar project in Denver, Colorado in the past to help reduce the cost of Islamic burials, which are typically free in Kuwait but often cost prohibitive in the United States.

39.     As a result, Mr. Agbodjogbe took Ms. Al-Sabah and a family member to visit a potential site for the burial center and cemetery.  After visiting the site, she decided to purchase the land and move forward with the project.

40.     On December 6, 2015, she wired $560,000.00 to Mr. Agbodjogbe for the purchase price so that he could complete the purchase.  Despite accepting the funds, it is believed that Mr. Agbodjogbe never purchased the property.

41.     In or around the spring of 2016, Ms. Al-Sabah began to grow suspicious of Mr. Agbodjogbe's behavior and motives.  While some of the agreed upon improvements to the Investment Properties had been completed, others had not commenced despite his representations otherwise.  Mr. Agbodjogbe offered a series of explanations for the delays that were misleading and lacked credibility.  As a result, Ms. Al-Sabah demanded documentation relating to the entities purportedly formed and transactions purportedly entered into by Mr. Agbodjogbe on her behalf.  Her multiple requests for such documentation were met with further delays and misrepresentations, the termination of the attorney assisting with the projects, and a claim by Mr. Agbodjogbe that he had contracted malaria during a trip to Senegal.  Eventually,

Mr. Agbodjogbe became completely unresponsive to Ms. Al-Sabah's attempts to communicate with him.

42.     In July 2016, Ms. Scott contacted Ms. Al-Sabah and stated that she and Mr. Agbodjogbe were experiencing financial difficulties and that they were at risk of losing their home.  Ms. Scott requested $350,000.00 from Ms. Al-Sabah, falsely claiming that Mr. Agbodjogbe would be killed if they did not receive the money and that he was in Senegal.

43.     Despite her misgivings, through one of her charities, Ms. Al-Sabah provided Ms. Scott and Mr. Agbodjogbe an interest free loan in the amount of $150,000.00, secured by a check of $150,000.00 drawn on the N&A Kitchen deposit account.  No payments have ever been made on the loan.

44.     Mr. Agbodjogbe continues to be completely unresponsive to Ms. Al-Sabah's attempts to communicate with him.  To date, he has neither provided the documentation requested by Ms. Al-Sabah nor provided her with any plausible explanation for what happened to the millions of dollars in funds Ms. Al-Sabah provided him and that he obtained by mortgaging the properties.

45.     Based on Mr. Agbodjogbe's conduct, there exists serious risk that Mr. Agbodjogbe could further abscond with, transfer, conceal, or encumber the Investment Properties, condominium, funds, or other assets, profits, or rents that have already been deliberately placed outside of the control of Ms. Al-Sabah.

## COUNT I:  FRAUDULENT MISREPRESENTATION

46.     Ms. Al-Sabah incorporates by reference the allegations contained in paragraphs 1 through 45 of the Complaint as if fully set forth herein.

47.     Mr. Agbodjogbe knowingly made false representations of material facts to Ms. Al-Sabah, including but not limited to representing that (a) he would form the defendant entities in accordance with his representations to and agreements with Ms. Al-Sabah; (b) Ms. Al-Sabah would be sole owner and member of 9 Jewels; (c) the Investment Properties would be purchased through 9 Jewels as personal investments for Ms. Al-Sabah; (d) funds provided over and above the purchase price for the Investment Properties would be used for their rehabilitation; (e) the condominium would be purchased by 9 Jewels for Ms. Al-Sabah's personal and family use; (f) funds provided would be used for the purchase of property for an Islamic burial center and cemetery; (g) he would repay the personal loan provided by Ms. Al-Sabah; (h) he would not misappropriate or misuse the funds entrusted to him by Ms. Al-Sabah for his own benefit; and (i) he would not alienate or encumber any of the properties he purchased with the funds provided to him by Ms. Al-Sabah without her knowledge and permission.

48.     Mr. Agbodjogbe knew that these representations were false.

49.     Mr. Agbodjogbe made these false representations for the purpose of defrauding Ms. Al-Sabah by absconding with her funds, assets, and the mortgage loan proceeds for his own benefit.

50.     Ms. Al-Sabah reasonably relied upon Mr. Agbodjogbe's false representations and would not have provided him with funds if such representations had not been made.

51.     As a direct and proximate result of Mr. Agbodjogbe's false misrepresentations, Ms. Al-Sabah suffered damages.

52.     Mr. Agbodjogbe's actions and conduct demonstrate his actual malice and were brought about by evil motive, intent to injure, and fraud.  Mr. Agbodjogbe had actual notice of

what he was doing and had a conscious and deliberate disregard for the foreseeable harm his fraudulent misrepresentations could cause.

WHEREFORE, Ms. Al-Sabah respectfully requests that the Court enter judgment in her favor and against Mr. Agbodjogbe, for (a) compensatory damages and punitive damages; (b) prejudgment and post judgment interest; (c) reasonable attorneys' fees; (d) all costs of this proceeding; (e) a constructive trust; (f) an accounting; (g) appointment of a receiver over the entities, Investment Properties, funds, and other assets, profits, and rents; and (h) all other just and proper relief.

## COUNT II:  FRAUDULENT CONCEALMENT

53.     Ms. Al-Sabah incorporates by reference the allegations contained in paragraphs 1 through 52 of the Complaint as if fully set forth herein.

54.     Mr. Agbodjogbe owed Ms. Al-Sabah a duty to disclose material facts related to the formation of the entities, the use of her funds, the status of the rehabilitation projects, the pledging of her properties as collateral to obtain loans, the failure to purchase property for the burial center and cemetery, and other material facts.

55.     Mr. Agbodjogbe failed to disclose those facts because he intended to defraud or deceive Ms. Al-Sabah by absconding with her funds and the mortgage loan proceeds and taking improper control and ownership over the Investment Properties and other assets.

56.     Ms. Al-Sabah took action in justifiable reliance on the concealment as she sent Mr. Agbodjogbe funds on multiple occasions for investment and charitable purposes not knowing that he had failed to disclose these facts.

57.     As a direct and proximate result of Mr. Agbodjogbe's fraudulent concealment, Ms. Al-Sabah suffered damages.

58.     Mr. Agbodjogbe's actions and conduct demonstrate his actual malice and were brought about by evil motive, intent to injure, and fraud.  Mr. Agbodjogbe had actual notice of what he was doing and had a conscious and deliberate disregard for the foreseeable harm his fraudulent concealment could cause.

WHEREFORE, Ms. Al-Sabah respectfully requests that the Court enter judgment in her favor and against Mr. Agbodjogbe, for (a) compensatory damages and punitive damages; (b) prejudgment and post judgment interest; (c) reasonable attorneys' fees; (d) all costs of this proceeding; (e) a constructive trust; (f) an accounting; (g) appointment of a receiver over the entities, Investment Properties, funds, and other assets, profits, and rents; and (h) all other just and proper relief.

## COUNT III:  CONVERSION

59.     Ms. Al-Sabah incorporates by reference the allegations contained in paragraphs 1 through 58 of the Complaint as if fully set forth herein.

60.     Ms. Al-Sabah transferred not less than $5,992,354.53 million in funds to Mr. Agbodjogbe and the defendant entities with explicit instructions that such funds were to be utilized to further certain specific charitable and personal investment purposes.  Mr. Agbodjogbe also caused the defendant entities to secure loans in the approximate amount of $1,897,000.00 by using assets rightfully belonging to Ms. Al-Sabah as security.

61.     By absconding with Ms. Al-Sabah's funds, using them to purchase assets for his own benefit, and absconding with loan proceeds from mortgage loans secured by those assets, Mr. Agbodjogbe and the defendant entities intentionally exerted unauthorized control over funds and the proceeds of those funds without authority or permission.

62.     Ms. Al-Sabah has a right to possession of her own funds, assets purchased with those funds, and loan proceeds from mortgage loans secured by those assets.

63.     As a direct and proximate result of the conversion of such funds and assets, as well as the equity of some of the properties, by Mr. Agbodjogbe and the defendant entities, Ms. Al-Sabah suffered damages.

64.     The actions and conduct of Mr. Agbodjogbe and the defendant entities demonstrate actual malice and were brought about by evil motive, intent to injure, and fraud. Mr. Agbodjogbe and the defendant entities had actual notice of what they were doing, and had a conscious and deliberate disregard for the foreseeable harm that conversion could cause.

WHEREFORE, Ms. Al-Sabah respectfully requests that the Court enter judgment in her favor and against Mr. Agbodjogbe and the defendant entities for (a) compensatory damages and punitive damages; (b) prejudgment and post judgment interest; (c) reasonable attorneys' fees; (d) all costs of this proceeding; (e) a constructive trust; (f) an accounting; (g) appointment of a receiver over the entities, Investment Properties, funds, and other assets, profits, and rents; and (h) all other just and proper relief.

## COUNT IV:  CIVIL CONSPIRACY

65.     Ms. Al-Sabah incorporates by reference the allegations contained in paragraphs 1 through 64 of the Complaint as if fully set forth herein.

66.     In perpetuating his fraud and converting Ms. Al-Sabah's funds and assets, Mr. Agbodjogbe worked in confederation with his wife, Ms. Scott, and the defendant entities.

67.     Mr. Agbodjogbe, Ms. Scott, and the defendant entities committed unlawful and tortious acts in furtherance of the conspiracy by making fraudulent misrepresentations to Ms. Al-Sabah and converting her funds and assets.

68.     As a direct result of the civil conspiracy, Ms. Al-Sabah has suffered damages and Mr. Agbodjogbe, Ms. Scott, and the defendant entities are liable for such damages.

WHEREFORE, Ms. Al-Sabah respectfully requests that the Court enter judgment in her favor and against Mr. Agbodjogbe, Ms. Scott, and the defendant entities for (a) compensatory damages and punitive damages; (b) prejudgment and post judgment interest; (c) reasonable attorneys' fees; (d) all costs of this proceeding; (e) a constructive trust; (f) an accounting; (g) appointment of a receiver over the entities, Investment Properties, funds, and other assets, profits, and rents; and (h) all other just and proper relief.

## COUNT V:  DETRIMENTAL RELIANCE

69.     Ms. Al-Sabah incorporates by reference the allegations contained in paragraphs 1 through 68 of the Complaint as if fully set forth herein.

70.     Mr. Agbodjogbe's fraudulent misrepresentations as described above constitute clear and definite promises to Ms. Al-Sabah.

71.     Mr. Agbodjogbe had a reasonable expectation that such promises would induce Ms. Al-Sabah to send him funds based on the misrepresentations he made, and Ms. Al-Sabah did send funds with the reasonable expectation that Mr. Agbodjogbe would act for her benefit and use the funds to further her charitable and personal investment purposes.

72.     Ms. Al-Sabah incurred a detriment by sending the funds that can only be avoided by the enforcement of Mr. Agbodjogbe's promises that he would utilize the funds in a manner consistent with Ms. Al-Sabah's instructions.

WHEREFORE, Ms. Al-Sabah respectfully requests that the Court enter judgment in her favor and against Mr. Agbodjogbe for (a) compensatory damages and punitive damages; (b) prejudgment and post judgment interest; (c) reasonable attorneys' fees; (d) all costs of this

proceeding; (e) a constructive trust; (f) an accounting; (g) appointment of a receiver over the

entities, Investment Properties, funds, and other assets, profits, and rents; and (h) all other just

and proper relief.

## COUNT VI:  UNJUST ENRICHMENT

73.     Ms. Al-Sabah incorporates by reference the allegations contained in paragraphs 1

through 72 of the Complaint as if fully set forth herein.

74.     Ms. Al-Sabah conferred a benefit upon Mr. Agbodjogbe by entrusting him with

not less than $5,992,354.53 million in funds that were to be utilized to further certain charitable

and personal investment purposes.  Mr. Agbodjogbe also caused the defendant entities to secure

loans in the approximate amount of $1,897,000.00 by using assets rightfully belonging to Ms.

Al-Sabah as security.

75.     Mr. Agbodjogbe misappropriated and misused those funds for his own personal

benefit.

76.     Mr. Agbodjogbe knew and appreciated that personal benefits were conferred upon

him through his misappropriation and misuse of the funds Ms. Al-Sabah provided to him.

77.     Mr. Agbodjogbe's acceptance or retention of such personal benefits under these

circumstances would make it inequitable for him to retain these benefits without payment of their

value to Ms. Al-Sabah.

WHEREFORE, Ms. Al-Sabah respectfully requests that the Court enter judgment in her

favor and against Defendant Agbodjogbe for (a) compensatory damages and punitive damages;

(b) prejudgment and post judgment interest; (c) reasonable attorneys' fees; (d) all costs of this

proceeding; (e) a constructive trust; (f) an accounting; (g) appointment of a receiver over the

entities, Investment Properties, funds, and other assets, profits, and rents; and (h) all other just and proper relief.

## COUNT VII:  BREACH OF CONTRACT

78.    Ms. Al-Sabah incorporates by reference the allegations contained in paragraphs 1 through 77 of the Complaint as if fully set forth herein.

79.    On July 14, 2016, Ms. Al-Sabah agreed to loan Mr. Agbodjogbe and Ms. Scott $150,000.00 as a zero-interest loan and Mr. Agbodjogbe and Ms. Scott agreed to repay the full principal balance of the loan.

80.    Ms. Al-Sabah performed as required under the agreement by disbursing $150,000.00 in loan proceeds to Mr. Agbodjogbe and Ms. Scott.

81.    Mr. Agbodjogbe and Ms. Scott have failed and refused to pay the amounts due and owing to Ms. Al-Sabah.  By failing and refusing to pay Ms. Al-Sabah the sum of $150,000.00, Mr. Agbodjogbe and Ms. Scott have breached the terms of the parties' agreement.

82.    Ms. Al-Sabah has performed all conditions precedent to recover under the agreement and has not excused non-performance by Ms. Agbodjogbe and Ms. Scott.

WHEREFORE, Ms. Al-Sabah respectfully requests that the Court enter judgment in her favor and against Mr. Agbodjogbe and Ms. Scott for (a) compensatory damages; (b) prejudgment and post judgment interest; (c) Ms. Al-Sabah's reasonable attorneys' fees; (d) all costs of this proceeding; and (e) all other just and proper relief.

## COUNT VIII:  BREACH OF AGENCY DUTIES

83.    Ms. Al-Sabah incorporates by reference the allegations contained in paragraphs 1 through 82 of the Complaint as if fully set forth herein.

84.     Ms. Al-Sabah, as principal, empowered Mr. Agbodjogbe to act as her agent to, among other things, establish legal entities, purchase and rehabilitate the Investment Properties, purchase the condominium, purchase property for an Islamic cemetery, and properly manage other affairs that he undertook on her behalf as agent.

85.     Ms. Al-Sabah reasonably relied on Mr. Agbodjogbe to advise and assist her in all such matters.

86.     As agent, Mr. Agbodjogbe was required to act in Ms. Al-Sabah's best interests and owed her a fiduciary duty, a duty of loyalty, and a duty to accurately and truthfully disclose to her all material facts regarding the charitable or personal investment work he undertook as her agent.

87.     Mr. Agbodjogbe violated those duties by establishing legal entities for his own benefit, absconding with funds and assets, absconding with loan proceeds, and through various other acts and omissions.

88.     Ms. Al-Sabah reasonably relied upon Mr. Agbodjogbe's promises, representations, and assurances.

89.     As a direct and proximate result of Mr. Agbodjogbe's acts and omissions, Ms. Al-Sabah suffered damages.

WHEREFORE, Ms. Al-Sabah respectfully requests that the Court enter judgment in her favor and against Mr. Agbodjogbe for (a) compensatory damages and punitive damages; (b) prejudgment and post judgment interest; (c) reasonable attorneys' fees; (d) all costs of this proceeding; (e) a constructive trust; (f) an accounting; (g) appointment of a receiver over the entities, Investment Properties, funds, and other assets, profits, and rents; and (h) all other just and proper relief.

## DEMAND FOR RELIEF

WHEREFORE, Ms. Al-Sabah respectfully requests that the Court enter judgment in her favor and against Mr. Agbodjogbe for the following:

1.      Awarding actual damages in an amount to be established at trial against the defendants for their misappropriation of the funds Ms. Al-Sabah transferred to them for charitable or personal investment purposes;

2.      Awarding actual damages in an amount to be established at trial against Mr. Agbodjogbe and Ms. Scott for their  failure to repay the $150,000.00 loan made to him by Ms. Al-Sabah;

3.      Awarding actual damages in an amount to be established at trial against the defendants for misappropriation of the rental or other income generated by the Investment Properties;

4.      Awarding actual damages to be established at trial against the defendants for the misappropriation of the 50% share of the profits from N&A Kitchen;

5.      Awarding actual damages in an amount to be established at trial against the defendants for misappropriating the equity in certain properties by obtaining mortgage loans;

6.      Awarding punitive damages to the extent defendants' actions and conduct demonstrate their actual malice and fraudulent intent and were brought about by evil motive, intent to injure, or fraud.

7.      Imposing a constructive trust over the entities, funds, Investment Properties, mortgage loan proceeds, and any and all other assets or proceeds rightfully belonging to Ms. Al-Sabah;

8.      Imposing a resulting trust over the entities, funds, Investment Properties, mortgage loan proceeds, and any and all other assets or proceeds held for the benefit of Ms. Al-Sabah;

9.      Requiring Mr. Agbodjogbe to account for the funds provided to him, the funds and assets held by the defendants, income from the defendants' business and other operations, and such other matters as the Court may deem proper;

10.      Appointing a receiver over the entities, Investment Properties, funds, and other assets, profits, and rents; and

11.      Awarding all other just and proper relief.

*[signature page to follow]*

Dated: March 17, 2017

_____/s/_____
Michael B. MacWilliams, Fed. Bar No. 23442
MBMacWilliams@Venable.com
Michael J. Wilson, Fed. Bar No. 18970
MJWilson@Venable.com
Venable LLP
750 East Pratt Street, Suite 900
Baltimore, Maryland 21202
T: (410) 244-7400
F: (410) 244-7742

*Attorneys for Plaintiff Alia Salem Al-Sabah*

OF COUNSEL FOR PLAINTIFF:

Colby Anne Kingsbury (*pro hac vice* forthcoming)
Colby.Kingsbury@FaegreBD.com
Faegre Baker Daniels
311 S. Wacker Drive, Suite 4300
Chicago, IL 60606
T: (312) 212-6500
F: (312) 212-6501