IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALIA SALEM AL-SABAH,     *

    Plaintiff,     *

v.     *    Civil Case No. SAG-17-730

JEAN AGBODJOGBE, *et al.*,     *

    Defendants.     *

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Alia Salem Al-Sabah ("Al-Sabah") filed a nine-count Amended Complaint against Defendants Jean Agbodjogbe ("Agbodjogbe"), Nandi Scott ("Scott"), N&A Kitchen, LLC ("N&A Kitchen"), N&A Kitchen II, LLC ("N&A Kitchen II"), 5722 York Road, LLC ("5722 York Road"), 9 Jewels, LLC ("9 Jewels"), and ASA Foundation, Inc. ("ASA Foundation"). ECF 76. On January 3, 2018, after receiving permission from both Al-Sabah and the Court, Defendant Agbodjogbe filed a Counterclaim against Al-Sabah.[1] ECF 85; *see* ECF 77 (consent motion); ECF 80 (Order granting the consent motion). The case was transferred to my docket on September 20, 2019. Before the Court are Al-Sabah's Motion in Limine, ECF 163, and Defendants' four Motions in Limine, ECF 165 to 168. I have reviewed each Motion and the related Oppositions and Replies thereto. *See* ECF 173 to 176, ECF 178 to 184. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, Al-Sabah's Motion will be granted in part and denied in

---

[1] The Counterclaim is only publicly available in redacted form. *See* ECF 85. The full, unredacted Counterclaim remains filed under seal. ECF 78; *see* ECF 87 (allowing the unredacted Counterclaim to remain sealed). Some of Defendants' Motions, however, implicate facts alleged in the unredacted Counterclaim. *See* ECF 77. Accordingly, the Court has redacted portions of this Opinion, with the parties' consent, pursuant to the Protective Order entered in this case. *See* ECF 65. An unredacted copy of this Opinion remains filed under seal. *See* ECF 189.

part. Three of Defendants' Motions will be denied, but their motion to exclude the existence of a judgment in favor of Plaintiff against Defendant Agbodjogbe will be granted.

I. **FACTUAL BACKGROUND**

Plaintiff Al-Sabah, a citizen and resident of Kuwait with a history of engaging in charitable ventures, visited her daughter in Baltimore, Maryland, on or about June 30, 2014. ECF 76, ¶¶ 2, 13. During her stay, Al-Sabah visited Agbodjogbe's restaurant, Nailah's Kitchen, and purchased $8,000 in Halal food for a local mosque whose kitchen had burned down. *Id.* ¶¶ 13-14. That chance encounter allegedly blossomed into a friendship, and eventually into a legal partnership. *Id.* ¶¶ 15-20. Specifically, Al-Sabah alleges that she entered into an agreement with Agbodjogbe to purchase a fifty percent ownership stake in Nailah's Kitchen in exchange for $150,000. *Id.* ¶¶ 16-19. Under this arrangement, Al-Sabah's profit share would be donated to charity. *Id.* ¶ 16. Al-Sabah allegedly agreed, and the two formed the new partnership, N&A Kitchen, by September, 2014. *Id.* ¶¶ 18-20. Al-Sabah alleges that she and Agbodjogbe executed two agreements, one being the "Articles of Organization and Operating Agreement," and the other being an agreement "regarding [Al-Sabah's] capital contribution to N&A Kitchen." *Id.* ¶¶ 18-19.

Just one month later, however, Agbodjogbe allegedly began "engaging in a fraudulent scheme to misappropriate millions of dollars from [Al-Sabah] while purporting to facilitate her personal investments and charitable endeavors." *Id.* ¶ 22. From October, 2014 until approximately the spring of 2016, Agbodjogbe proposed various real estate "investment" opportunities to Al-Sabah as a means of raising more money for charitable causes. *Id.* ¶¶ 23-41.

For instance, from October, 2014 to January, 2015, Al-Sabah allegedly wired Agbodjogbe over $3 million to purchase a number of properties in West Baltimore. *Id.* ¶ 26. However, Al-Sabah alleges that Agbodjogbe purchased these properties with entities that Agbodjogbe

2

organized, and that Al-Sabah had no ownership stake in, meaning Al-Sabah owned none of the West Baltimore properties. *Id.* ¶¶ 29, 32. Al-Sabah claims that Agbodjogbe, through a number of the corporate defendants, took out mortgages on the West Baltimore properties, but used none of the funds to rehabilitate or otherwise improve those properties. *Id.* ¶¶ 31-32. Agbodjogbe also allegedly used money Al-Sabah wired to him to renovate those properties to, instead, purchase a personal residence for himself at 103 Mount Wilson Lane, Pikesville, Maryland 21208 ("the 103 Mount Wilson Lane property"). *Id.* ¶¶ 30, 92-93. By the spring of 2016, Al-Sabah grew suspicious of Agbodjogbe and requested, with little success, documentation from Agbodjogbe for uncompleted property improvements and transactions completed on Al-Sabah's behalf. *Id.* ¶ 41.

Then, in July, 2016, Al-Sabah received a voicemail from Nandi Scott, Agbodjogbe's wife, stating that the two were "experiencing financial difficulties and that they were at risk of losing their home." *Id.* ¶ 42; ECF 138 at 16. Scott requested $350,000 from Al-Sabah to prevent Agbodjogbe and Scott from losing their home. ECF 76, ¶ 42. Despite her suspicions, Al-Sabah, through one of her charities, loaned Agbodjogbe $150,000 interest free. ECF 76, ¶ 43; ECF 138 at 11-12. No payments were ever made on that loan. ECF 76, ¶ 43; ECF 138 at 14. Al-Sabah alleges that Scott was also a party to that oral contract. ECF 76, ¶ 43.

Al-Sabah seeks to recover "nearly" $6,000,000 from Defendant Agbodjogbe and his "co-conspirators" under eight claims for monetary relief: Fraudulent Misrepresentation (Count I); Fraudulent Concealment (Count II); Conversion (Count III); Civil Conspiracy (Count IV); Detrimental Reliance (Count V); Unjust Enrichment (Count VI); Breach of Contract (Count VII); and Breach of Agency Duties (Count VIII). *Id.* ¶¶ 1, 46-89. Count IX of the Amended Complaint seeks a Declaratory Judgment against Defendants Agbodjogbe, N&A Kitchen, LLC, 9 Jewels, LLC, and 5722 York Road, LLC to determine ownership of N&A Kitchen II, LLC, 9 Jewels, LLC,

3

5722 York Road, LLC, and the ASA Foundation, Inc., as well as ownership of the assets of N&A Kitchen, LLC and the 103 Mt. Wilson Lane property. *Id.* ¶ 93. On January 14, 2019, Judge Hollander granted Al-Sabah's Motion for Partial Summary Judgment on Count VII against Defendant Agbodjogbe, finding that he breached his contractual obligation to pay back the $150,000 loan Al-Sabah made to him in July, 2016. ECF 138 at 11-14.

Defendant Agbodjogbe filed a counterclaim against Al-Sabah on January 3, 2018. ECF 85; *see* ECF 78 (unredacted sealed Counterclaim). ▇

▇ ECF 78, ¶ 23. ▇

▇ *Id.* ¶¶ 25-26. According to Agbodjogbe, Al-Sabah told him on May 21, 2015, "that she desired for her contributions to their various ventures [to] continue to be received by him as gifts." *Id.* ¶ 27. He also alleges that Al-Sabah "renounced any interest" she had in N&A Kitchen, 9 Jewels, and "all of the business and property ventures" that she was involved in with Agbodjogbe. *Id.* ¶ 28. Agbodjogbe claims that no dispute between he and Al-Sabah arose until ▇ September, 2016, and that only since then has Al-Sabah claimed that Agbodjogbe's business dealings on her behalf were improper. *Id.* ¶¶ 46-49. Agbodjogbe seeks an unspecified amount of damages under three claims for relief: Negligent Misrepresentation (Count I); Unjust Enrichment (Count II); and Quantum Meruit (Count III). *Id.* ¶¶ 50-68.

## II.  LEGAL STANDARDS

Typically, pretrial motions in limine seek to exclude prejudicial evidence before it is offered at trial. *Changzhou Kaidi Elec. Co., Ltd. v. Okin Am., Inc.*, 102 F. Supp. 3d 740, 745 (D. Md. 2015) (quoting *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984)). These motions allow the

Court to avoid "lengthy argument at, or interruption of, the trial." *Banque Hypothecaire Du Canton De Geneve v. Union Mines, Inc.*, 652 F. Supp. 1400, 1401 (D. Md. 1987); *see also Changzhou Kaidi*, 102 F. Supp. 3d at 745 ("[Motions in limine] are 'designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.'" (quoting *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013))). Motions in limine further promote judicial efficiency by preserving the issues raised for appeal and eliminating the need for parties to renew their objections at trial, "just so long as the movant has clearly identified the ruling sought and the trial court has ruled upon it." *United States v. Williams*, 81 F.3d 1321, 1325 (4th Cir. 1996); *see* Fed. R. Evid. 103(a); *cf.* R. 103(a) advisory committee's note to 2000 amendment (acknowledging that Rule 103(a) "applies to all rulings on evidence . . . including so-called "*in limine*" rulings").

Generally, courts should grant a motion in limine "only when the evidence is clearly inadmissible on all potential grounds." *Dorman v. Anne Arundel Med. Ctr.*, No. MJG-15-1102, 2018 WL 2431859, at *1 (D. Md. May 30, 2018) (quoting *Emami v. Bolden*, 241 F. Supp. 3d 673, 681 (E.D. Va. 2017)). Ultimately, rulings on these motions fall within the Court's "broad discretion." *Kauffman v. Park Place Hospitality Grp.*, 468 F. App'x 220, 222 (4th Cir. 2012); *see also United States v. Johnson*, 617 F.3d 286, 292 (4th Cir. 2010) (noting that evidentiary rulings fall within a trial court's discretion).

### III. ANALYSIS

**A. Plaintiff's Motion in Limine to Preclude Evidence or Argument Regarding Any Alleged DNA Testing, and Seeking Sanctions Pursuant to 28 U.S.C. § 1927, ECF 163**

1. <u>The Motion to Exclude</u>

Plaintiff first seeks to exclude the results of a DNA test purportedly conducted by Defendants ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮,

5

ECF 163 at 1-2, ███████████████████████████████████████, ECF 78, ¶¶ 23-30.  According to Plaintiff, the results of the test "were muddled and unilluminating, at best."  ECF 163 at 2.  Former defense counsel considered serving a motion to compel Plaintiff to provide a DNA sample for comparison purposes, but the motion was not pursued.  *Id.*  Plaintiff argues that without an expert designated to testify about the results, the results are inadmissible, since there is no one to lay a proper foundation for their admission.  *Id.* at 4.  Plaintiff also argues that the results are irrelevant, inadmissible hearsay, and prejudicial.  *Id.* at 4-5.  Defendants acknowledge that they have not designated a DNA expert to testify at trial.  ECF 178 at 2, ¶ 3.  Nonetheless, Defendants assert the DNA results are admissible because "[i]t is impossible for the Defendants' [sic] to tell prior to trial that there may be no circumstance where the DNA testing that was undertaken in this cause may be mentioned or referenced by any witness."  *Id.*

Federal Rules of Evidence 701 and 702 draw a "critical distinction" between lay witness and expert witness testimony:  under Rule 702, an expert witness "must possess some specialized knowledge or skill or education that is not in the possession of the jurors."  *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 203 (4th Cir. 2000) (quoting KENNETH R. REDDEN & STEPHEN A. SALTZBURG, FEDERAL RULES OF EVIDENCE MANUAL 225 (1975)); *see* Fed. R. Evid. 702.  Rule 701, on the other hand, only allows lay witnesses to express opinions "on the basis of relevant historical or narrative facts that the witness has perceived."  *MCI Telecomm. Corp. v. Wanzer*, 897 F.2d 703, 706 (4th Cir. 1990) (quoting *Teen-Ed, Inc. v. Kimball In'l, Inc.*, 620 F.2d 399, 403 (3d Cir. 1980)); *see* Fed. R. Evid. 701.

DNA evidence, with all of its scientific complexities and nuances, simply is not the type of evidence that lay witnesses can competently testimony about.  *See, e.g.*, *United States v. Davis*,

602 F. Supp. 2d 658, 661-63 (D. Md. 2009) (applying Rule 702 to a motion in limine to suppress DNA evidence). The knowledge needed to competently testify about ▮▮▮▮▮▮▮▮▮▮ were tested, and the test results' significance, is "beyond the realm of common experience" and "require[s] the special skill and knowledge of an expert witness." *Certain Underwriters at Lloyd's*, 232 F.3d at 203 (quoting *Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 846 (10th Cir. 1979)).

The Federal Rules of Civil Procedure require parties to disclose which, if any, experts will testify in their case-in-chief "at least 90 days before the date set for trial," or otherwise in accordance with the Court-issued schedule. Fed. R. Civ. P. 26(a)(2)(D)(i). According to the most recent Scheduling Order in this matter, Defendants' Rule 26(a)(2) disclosures were due on May 7, 2018. ECF 89 at 2. To date, Defendants have not designated an expert in DNA testing. ECF 178 at 2, ¶ 3. Further, Defendants have not provided any "substantial justification" for this failure, or even asked the Court for an extension of the expert designation deadline to do so. *See* Fed. R. Civ. P. 37(c)(1). Accordingly, Plaintiff's Motion to exclude the DNA test will be granted. The Defendants and their witnesses are precluded from making any mention of the DNA testing, or any results of such testing, at trial. *See id.*; *Steele v. Kenner*, 129 F. App'x 777, 780 (4th Cir. 2005).

### 2. The Motion for Sanctions

Plaintiff also seeks sanctions under 29 U.S.C. § 1927. Section 1927 permits, but does not require, the Court to award costs, expenses, and reasonable attorneys' fees incurred where an attorney acts to "multipl[y] the proceedings . . . unreasonably and vexatiously." Plaintiff points to the fact that she, through her counsel, reached out to defense counsel numerous times to work out a stipulation to prevent Plaintiff from having to file this Motion in Limine. ECF 163 at 2-4; *see* ECF 163-1 to -4. She asserts that defense counsel's failure to substantively engage in these

discussions served "no purpose . . . other than the vexatious infliction of unnecessary expense on Plaintiff and unwarranted waste of the Court's time and attention." ECF 163 at 6.

Plaintiff's argument is unpersuasive. Sanctions under § 1927 are designed to "limit[] the abuse of court processes." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 762 (1980). Before imposing § 1927 sanctions, the Court must find that Defendants' counsel acted in bad faith, either subjectively or objectively. *United States ex rel. Union Light & Power Co. v. CamCo Constr. Co.*, 221 F. Supp. 2d 630, 634 (D. Md. 2002); *Thomas v. Treasury Mgmt. Ass'n, Inc.*, 158 F.R.D. 364, 371 (D. Md. 1994). To be sure, the Court does not condone Defendants' actions in taking the meritless position they did in contesting Plaintiff's Motion, and, in their own words, acting with "sloppiness and a lack of communication." ECF 178 at 4. However, the Court cannot find that Defendants' conduct rises to the level of vexatiously multiplying the proceedings, such as to justify imposing an attorneys' fees award. *See, e.g.*, ECF 161 at 11 (Judge Hollander's Opinion in this case denying Plaintiff's § 1927 sanctions request for filing the frivolous Objection to Judge Copperthite's Order on Defendants' spoliation claims); *Shank v. Eagle Techs., Inc.*, No. RWT-10-2231, 2013 WL 4442033, at *9-14 (D. Md. Aug. 15, 2013) (awarding § 1927 sanctions for plaintiffs' counsel's seven-month refusal to settle or voluntarily dismiss those plaintiffs' claims because, at the end of discovery and after the entry of partial summary judgment against the plaintiffs, counsel "knew or should have known [that] their remaining clients' claims lacked merit" and that those claims were of "nominal value[]" at best), *report and recommendation adopted*, 2013 WL 5487865 (D. Md. Sept. 30, 2013); *Davis v. Home Depot U.S.A., Inc.*, No. PJM-09-162,

2010 WL 1245775, at *3-4 (D. Md. Mar. 26, 2010) (imposing § 1927 sanctions because a lawyer relied on forged documents and perjured testimony in a summary judgment opposition brief).[2]

**B. Defendants' Motion in Limine #1 to Exclude Any Evidence or Reference About Defendant Jean Agbodjogbe's Relationship with Ndeye Bolo Fall, ECF 165**

Defendants' first motion seeks to exclude all evidence referring to a purported relationship between Defendant Agbodjogbe and Ndeye Bolo Fall. ECF 165. Agbodjogbe claims that Ms. Fall was an employee of Nailah's Kitchen. ECF 176-1 at 12 (Agbodjogbe Dep.). Defendants argue that Ms. Fall offers no potentially relevant evidence to the case, and that the only purpose her testimony could serve is to improperly prejudice the Defendants. ECF 165 at 4.

Federal Rule of Evidence 401 defines relevant evidence as that which "has any tendency to make a fact more or less probable than it would be without the evidence" and "is of consequence in determining the action." Rule 403, however, requires the exclusion of relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, [or] undue delay."

---

[2] As a final note, the Court discovered patently obvious plagiarism by defense counsel, James Sweeting III, Esq. Almost two and a half pages of Defendants' Response, ECF 178 at 4-6, is copied and pasted from the case *Amlong & Amlong, P.A. v. Denny's Inc.*, 500 F.3d 1230 (11th Cir. 2007). The first clues Mr. Sweeting left were several suspicious sentences starting with phrases like, "As a panel of this Court observed," and "We have consistently held." ECF 178 at 4-5. Further, the paragraph on page 6 ends with the following (unfinished) sentence: "For example, in *Cruz v. Savage*, 896 F.2d 626 (1st Cir. 1990),[.]" *Id.* at 6. Perhaps the most obvious clue, however, was counsel's choice to leave Westlaw's star pagination indicator from *Amlong & Amlong* in Defendants' Response. *See id.* at 6 (containing the phrase "the district court *1240 must compare"). While Mr. Sweeting ultimately cited to *Amlong & Amlong*, the citation dubiously appeared in the middle of a sentence two pages into the plagiarized material, and did not reflect the extent to which the case's language had been copied. *See id.* In the end, the Court does not feel that this conduct warrants sanctions or referral to the disciplinary committee. However, the Court reminds Mr. Sweeting that, while it does not expect an attorney's work product to conform to every nuanced Bluebook case citation convention, it expects that counsel, at bare minimum, will properly attribute the sources of his arguments, especially when using verbatim quotations.

As alleged in the Amended Complaint, Defendants Agbodjogbe and Nandi Scott are married. ECF 76, ¶ 66. Agbodjogbe's Counterclaim alleges that, ███████████ ███████████████████████, on September 12, 2016, Agbodjogbe flew from Senegal to Dubai to meet Al-Sabah in Dubai at her request. ECF 78, ¶ 45. While there, Agbodjogbe alleges that he and Al-Sabah had a "disagreement," and that their relationship "deteriorated." *Id.* ¶ 46.

On October 23, 2016, when Al-Sabah was "beginning to consider whether Agbodjogbe might be a fraud," Al-Sabah claims that her daughter received a call from Agbodjogbe indicating that he needed "everybody to leave [him] alone right now" because he was dealing with a "personal issue." ECF 176 at 5; ECF 176-1 at 117-18. That personal issue, according to Agbodjogbe, was a $20,000 debt he owed to one Renwick Bass – Mr. Bass was allegedly threatening and harassing Agbodjogbe at his restaurant. ECF 176-1 at 21-22.

Plaintiff, however, proffers that this personal issue related to Ms. Fall. Plaintiff, relying on Agbodjogbe's deposition testimony, ███████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████ ████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████ at that time. *Id.* at 35. Agbodjogbe further testified that he was with Ms. Fall in August, 2016 when ████████████████████████████████████████████. *Id.* at 34-35. Ms. Fall, however, ████████████, which happened either in September or November, 2016. *Id.* at 35, 41. Agbodjogbe testified that the ████████ was "a major trauma" for them both. *Id.* at 35, 39. Plaintiff finally proffers that Agbodjogbe is financially supporting Ms. Fall – Agbodjogbe testified

10

that, beginning in May, 2016, he had an apartment at the Towson Promenade, Unit 5138, *id.* at 5, and Ms. Fall testified at her September 13, 2018 deposition that she then lived in Unit 5138 at the Towson Promenade, ECF 176-2 at 3, 6.

The parties previously litigated a discovery dispute concerning Ms. Fall before Judge Copperthite. *See* ECF 100 (Plaintiff's Motion); ECF 107 (Defendants' Opposition); ECF 110 (Plaintiff's Reply). Plaintiff sought reconsideration of Judge Copperthite's previous ruling, ECF 64, denying Plaintiff from inquiring whether Agbodjogbe ███████████████████████████████████████████████████████. ECF 100-1 at 3; *see* ECF 64 at 5. In his later ruling that discovery into Agbodjogbe's interactions with Ms. Fall (then identified as "Jane Doe") could proceed in light of evidence discovered since that first ruling, Judge Copperthite aptly reasoned:

> The evidence sought is relevant because it relates to the purpose and use of funds obtained from Plaintiff and is also relevant to the credibility issues Plaintiff presents. What is abundantly clear in this litigation is that someone is not being truthful. . . . Credibility is crucial here, even more so than most cases because the parties admit the lack of a "grey" area where the truth is somewhere in the middle. What is also apparent to the Court is that the alleged other relationship between Defendant and [Ms. Fall] was occurring during the critical times of the events giving rise to this litigation. ████████████████████████████████████████████████████████████████████████████████████████████████

ECF 114 at 1.

Of course, evidence need not be admissible to be discoverable under the Federal Rules. *See* Fed. R. Civ. P. 26(b)(1). Yet for similar reasons that Judge Copperthite previously elucidated, the evidence regarding Ms. Fall remains relevant for trial purposes. *See* ECF 114 at 1. First, Defendants are correct that Agbodjogbe's alleged relationship with Ms. Fall ███████████ ████████████████████████, ECF 184 at 2, 5. But whether Ms. Fall's alleged ████████ was the "personal issue" Agbodjogbe was dealing with in October, 2016, or whether it was the debt he allegedly owes, bears on Agbodjogbe's credibility.

11

Second, Al-Sabah denies ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, having requested him to come to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Dubai in September, 2016. *See* ECF 90, ¶¶ 26-27, 44-47 (Al-Sabah's Answer to Agbodjogbe's Counterclaim); ECF 176 at 1 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Agbodjogbe testified at his deposition that he was with Ms. Fall in August, 2016 when ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, and Agbodjogbe's credit card was used for her ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. ECF 176-1 at 33-35. Thus, these facts could allow a factfinder to doubt Agbodjogbe's alleged story about meeting Al-Sabah in Dubai in that same month.

Defendants' prejudice arguments also fail. While the parties will need to ensure that this three-week jury trial does not turn into a trial on Agbodjogbe's ▓▓▓▓▓▓▓▓▓▓▓▓▓▓, Agbodjogbe's Counterclaim ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Given the weighty probative value of the evidence, as described above, the Court cannot find that Ms. Fall's possible testimony, or any testimony regarding Agbodjogbe's relationship with Ms. Fall, presents a danger of confusing or misleading the jury, or prejudicing any Defendant, that substantially outweighs the evidence's probative value. Therefore, Defendants' first motion will be denied.[3]

**C. Defendants' Motion in Limine #2 to Exclude Any Evidence or Reference About the Purported Agreement Between All Members of N&A Kitchen, LLC Dated September 2, 2014, and for Imposition of Sanctions, ECF 166**

Next, Defendants seek to exclude "any evidence or reference about" a partnership agreement executed between the purported members of N&A Kitchen, LLC. ECF 166 at 1-6. The Motion concerns four photographs that Al-Sabah took of an N&A Kitchen *operating agreement*,

---

[3] Defendants also argue, in their Reply, that evidence regarding Ms. Fall is improper character evidence as to Agbodjogbe and must be excluded under Federal Rule of Evidence 404(b). ECF 184 at 5-6. Because this argument comes for the first time in the Reply, I decline to address it. *See Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006).

but later deleted during the course of litigation. *Id.* at 2-5. Because of this, Defendants now seek to exclude the document attached to their Motion as ECF 166-1: the N&A Kitchen *partnership agreement*. ECF 166 at 6-8. There are no facts, let alone law, to support this position.

Just months ago, Defendants raised this very same issue in the context of a motion for sanctions against Al-Sabah, arguing that her deleting the four photos of the N&A Kitchen Operating Agreement constituted spoliation. ECF 147. Not one, but two federal judges, denied that motion. ECF 151 (Judge Copperthite's Order); ECF 161-62 (Judge Hollander's Opinion and Order denying Defendants' Objection to Judge Copperthite's Order). As Judge Hollander reiterated, Defendants failed to explain how they were prejudiced by the loss of the photographs depicting the Operating Agreement "given that [Defendants] possess PDF versions and, more important, the executed agreement itself." ECF 161 at 8. Indeed, because Judge Hollander agreed with Judge Copperthite's finding that the spoliation motion was "frivolous" on the merits, Judge Hollander awarded Plaintiff her attorneys' fees incurred in litigating the Objection. *Id.* at 11.

Al-Sabah states that she has produced an executed copy of both the Partnership and Operating Agreements to Defendants. ECF 174 at 6; *see* ECF 174-10 (executed Operating Agreement with the word "DRAFT" appearing on each page); ECF 174-11 (executed Partnership Agreement). Defendants have not shown how Al-Sabah's failure to produce the pictures of the Operating Agreement – which this Court has ruled did not prejudice Defendants – requires the Court to now exclude any mention of the Partnership Agreement, a separate document. This argument is contrary to the facts that this Court has already (twice) found, and is wholly unsupported by law. The Motion, and the accompanying request for sanctions, must be denied.

**D. Defendants' Motion in Limine #3 to Exclude Any Evidence or Reference to the Purported Email Attributed to Defendant Nandi A. Scott, ECF 167**

Next, Defendants seek to exclude "any evidence or reference" to an email written by Defendant Scott to Al-Sabah on July 13, 2016 ("the Scott email"), including (1) the email's existence, (2) the email's contents, and (3) "the circumstances under which the email was drafted." ECF 167 at 1-2. Defendants argue that the email is irrelevant and only offered to "prejudice, harass, embarrass, and intimidate Defendants." *Id.* at 4. Conversely, Al-Sabah argues that the Scott email "is patently relevant and material evidence of the Defendants' coordinated scheme to further the fraud perpetrated on Plaintiff even after she had told Defendant Agbodjogbe that she would send him no more money." ECF 173 at 6. Defendants reply that the Scott email, at most, is relevant only to issues that the Court already decided in its ruling on Plaintiff's Motion for Partial Summary Judgment. ECF 173 at 2-3; *see* ECF 138 at 11-14 (granting Plaintiff's Motion as to Count VII of the Amended Complaint for Breach of Contract).

In the Scott email, Scott explains to Al-Sabah that her husband, Agbodjogbe, "took out a loan against our home last year when he partnered with [Al-Sabah] to do Nailah[']s at York [R]oad. . . . And now he has defaulted on the loan and if not paid by Friday our home will go into foreclosure and we will be evicted." ECF 173-1 at 2. Scott continued, "I don't know where else to turn. I just don't know how I will tell my children we are losing our home. Please sister Alia, we worked so hard for this home and I believe my husband make a big mistake to take a loan out on it." *Id.* Scott closes by asking Al-Sabah to call her. *Id.*

It is true that Judge Hollander's Summary Judgment Opinion adjudicated the issue of Defendant Agbodjogbe's liability as to Plaintiff's Breach of Contract claim. *See* ECF 138 at 14; *infra* Part III.E. However, even if the Opinion had established Scott's liability on that claim, Scott's email would remain admissible for other purposes. Indeed, Scott is alleged to have engaged

14

in a civil conspiracy with Agbodjogbe and the Defendant entities to make fraudulent misrepresentations to Al-Sabah to "convert[] her funds and assets." ECF 77, ¶¶ 65-68. Judge Hollander's Opinion also found, as fact, that Agbodjogbe made a false statement to Al-Sabah on July 13, 2016, when he represented that he was "only short $165,000" on his loan.[4] *Id.* at 17. Scott's email and the circumstances under which it was drafted, then, are necessarily relevant to whether she conspired with Agbodjogbe to make fraudulent statements to Al-Sabah to "convert[] her funds and assets." ECF 77, ¶ 67. Accordingly, the email is probative, and that probative value is not substantially outweighed by any risk of prejudice. The Motion must therefore be denied.

    **E.    Defendants' Motion in Limine #4 to Exclude Any Evidence or Reference Regarding the Existence of a Judgment in Favor of the Plaintiff Against Defendant Jean Agbodjogbe, ECF 168**

Finally, Defendants seek a ruling preventing Plaintiff from mentioning the existence of the partial summary judgment entered "against Defendant Jean Agbodjogbe." ECF 168 at 1. Defendants argue that the judgment is irrelevant and prejudicial as to Plaintiff's remaining claims for relief. *Id.* at 4; ECF 183 at 4 (Defendants' Reply). Plaintiff construes Judge Hollander's ruling as ambiguous, but argues that the Order granting Plaintiff's Motion as to Count VII of the Amended Complaint grants the motion "without restriction or limitation." ECF 175 at 2. Plaintiff believes it is necessary to offer some evidence regarding the breach of contract claim because the Opinion does not sufficiently indicate "the amount of damages owed by which of the individual defendants." Plaintiff argues that Defendants will suffer no prejudice through the introduction of this evidence. *Id.*

---

[4] This factual finding will need to be presented to the jury. Presumably, Defendants would prefer to agree to a factual stipulation, rather than permit a disclosure of the factual finding made by the Court.

Plaintiff's arguments are unpersuasive. By the terms of Plaintiff's Motion for Partial Summary Judgment, Plaintiff sought "an order of partial summary judgment . . . against Defendant Jean Agbodjogbe on Count VII of Plaintiff's Amended Complaint for breach of contract in connection with the $150,000 lent to Agbodjogbe in July 2016," as well as "a money judgment for compensatory damages . . . against Mr. Agbodjogbe in the amount of $150,000." ECF 115 at 1-2, ¶¶ (c)-(d); *see also* ECF 115-1 at 8 (Plaintiff's Memorandum in Support) ("Plaintiff is entitled to the entry of partial summary judgment in her favor, finding *Defendant Jean Agbodjogbe* liable and awarding compensatory damages of $150,000 *against him* on the breach of contract (Count VII) . . . claim[] . . . ." (emphasis added)). Judge Hollander's Opinion states in no uncertain terms: "Agbodjogbe agreed to accept a one-year interest free loan of $150,000 from Al-Sabah. Over a year later, Agbodjogbe has not repaid the loan. Therefore, I conclude that defendant is in breach of contract." ECF 138 at 14. There is no question that Judge Hollander's Opinion adjudicated only Agbodjogbe's liability, and found $150,000 in damages, as Plaintiff requested.

Here, there is a significant danger that allowing Plaintiff to use, as evidence, the Court's previous liability finding may prejudice both Agbodjogbe and his co-defendants in defending Plaintiff's other claims for relief. The Court further finds that this danger substantially outweighs the finding's minimal probative value to Plaintiff's remaining claims for relief, thus requiring exclusion of the Court's liability finding, and judgment, as evidence during trial. *See, e.g.*, *Atlanta Attachment Co. v. Leggett & Platt, Inc.*, No. 1:05-cv-1071-CDE, 2007 WL 9700923, at *2 (N.D. Ga. Mar. 16, 2007) (precluding references to previous partial summary judgment rulings to prevent improper prejudice to the party found liable). It should be noted, however, that Plaintiff may still elicit the evidence utilized to prove Agbodjogbe's liability on the breach of contract claim at trial. This evidence may be relevant to Plaintiff's remaining claims for relief, particularly her breach of

contract claim against Defendant Scott, and her Fraudulent Misrepresentation and Civil Conspiracy claims.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion in Limine, ECF 163, is GRANTED IN PART and DENIED IN PART. Defendants' Motions in Limine, ECF 165 to 167, are DENIED, and ECF 168 is GRANTED. The Court will reconsider the rulings herein, however, should the facts or circumstances at trial differ from that which has been presented to the Court in the papers. The implementing Order that accompanied the Court's sealed Memorandum Opinion, ECF 190, remains in effect.

Dated: December 3, 2019 /s/
Stephanie A. Gallagher
United States District Judge