# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ALIA SALEM AL-SABAH, | * |
| Plaintiff, | * |
| v. | * Civil Case No. SAG-17-730 |
| JEAN AGBODJOGBE, *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On November 22, 2017, Plaintiff Alia Salem Al-Sabah ("Al-Sabah") filed a nine-count Amended Complaint against Defendants Jean Agbodjogbe ("Agbodjogbe"), N&A Kitchen, LLC ("N&A Kitchen"), N&A Kitchen II, LLC ("N&A Kitchen II"), 5722 York Road, LLC ("5722 York Road"), and 9 Jewels, LLC ("9 Jewels") [hereinafter "the Agbodjogbe Lawsuit"]. ECF 76. A nine-day jury trial commenced on January 21, 2020. *See* ECF 236-240, 242-45, 249. The jury entered a verdict in favor of Al-Sabah against each Defendant on each count submitted, and awarded her $7,641,800 in compensatory damages, and an additional $1,000,000 in punitive damages. ECF 256; *see also* ECF 259 (Order of Judgment). On February 10, 2020, the parties submitted post-trial motions. As relevant here, Al-Sabah filed a Motion for Entry of Declaratory Judgment and Imposition of Constructive Trust, or in the Alternative, Motion to Alter or Amend Final Judgment ("the Declaratory Judgment Motion"). ECF 262. Defendants opposed, ECF 272, and Al-Sabah replied, ECF 275. Defendants also filed a Motion for Judgment on Partial Findings

("Defendants' Motion").[1] ECF 263. Al-Sabah opposed, ECF 271, but Defendants declined to reply.

On February 23, 2020, Sharestates Investments, LLC ("Sharestates") and Chondrite Asset Trust ("Chondrite") (together, "the Proposed Intervenors") filed a Motion for Extension of Time to Intervene and Respond to the Declaratory Judgment Motion ("the Motion for Extension of Time"). ECF 267. After the Court required an expedited briefing schedule, *see* ECF 268, 274, Al-Sabah opposed, ECF 273, and the Proposed Intervenors replied, ECF 276. The Court has reviewed each pleading, and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, Al-Sabah's Declaratory Judgment Motion will be denied, and Defendants' and Proposed Intervenors' Motions will be denied as moot.

## I. FACTUAL BACKGROUND

### A. The Underlying Litigation in the Agbodjogbe Lawsuit

Only a brief summary of the facts elucidated at trial is necessary for the purposes of the instant Motions. At trial, Al-Sabah produced evidence demonstrating that between September, 2014, and April, 2016, Al-Sabah wired Agbodjogbe over $7.8 million for, what she believed, would be the purpose of purchasing, and renovating, several properties located in Baltimore City, Maryland, and New York, New York. *See* ECF 232 at 17-19 (Joint Factual Stipulations). While Agbodjogbe told Al-Sabah that she would own each property, unbeknownst to Al-Sabah, Agbodjogbe actually purchased each property through corporate entities that Agbodjogbe established in his name alone. The evidence at trial demonstrated that Defendants purchased the following properties using money provided by Al-Sabah:

---

[1] Defendants have filed other post-trial motions. *See* ECF 264, 265. These will be addressed in a separate ruling.

- Agbodjogbe purchased a personal residence at 103 Mount Wilson Lane in Pikesville, Maryland;

- 9 Jewels purchased real property at 306-310 North Howard Street in Baltimore, Maryland, as well as a condominium located at 325 5th Avenue in New York City, New York;

- N&A Kitchen purchased real property at 400 North Howard Street in Baltimore, Maryland; and

- 5722 York Road, LLC purchased real property at 5722 York Road in Baltimore, Maryland.

ECF 232 at 18-19. Evidence demonstrated that Agbodjogbe, along with the corporate Defendants, purchased additional real property, but those properties are not at issue in these motions. ECF 262-1 at 6 n.6.

Al-Sabah tried five claims for relief to the jury: Fraudulent Misrepresentation, Fraudulent Concealment, Breach of Agency Duties, Unjust Enrichment, and Civil Conspiracy.[2] The jury found Agbodjogbe liable on each claim for relief, and further found that each corporate Defendant had conspired with Agbodjogbe to perpetrate the fraud on Al-Sabah. ECF 256. In all, the jury awarded Al-Sabah $7,641,800 in compensatory damages, and an additional $1,000,000 in punitive damages, jointly and severally against each Defendant. *Id.*; ECF 259 (Order of Judgment).

---

[2] This Court entered summary judgment in Al-Sabah's favor against Agbodjogbe only as to Al-Sabah's Breach of Contract claim. ECF 138-39; *see also* ECF 191 at 16. Al-Sabah also included Nandi Scott and ASA Foundation, Inc. as Defendants, ECF 76, but has since abandoned her claims against them, *see* ECF 232 at 16; ECF 241. Al-Sabah also abandoned the Conversion and Detrimental Reliance claims lodged in her Amended Complaint. ECF 232 at 16; ECF 248.

Only Al-Sabah's request for declaratory relief remains pending. In her Amended Complaint, Al-Sabah requested a declaratory judgment against each Defendant declaring Plaintiff the owner of: (1) all of the assets of N&A Kitchen II, 9 Jewels, and 5722 York Road, to include the real property each entity owns; (2) fifty percent of the assets of N&A Kitchen; and (3) "the real property (but not the encumbrances thereto) located at 103 Mt. Wilson Lane, Pikesville, Maryland 21208." ECF 76, ¶ 93. This Court declined to allow Al-Sabah to submit these claims to the jury, and instead determined that any request for declaratory and/or equitable relief would be decided by the Court in post-trial briefing.

### B. The Pending Litigation in the Related Lender Lawsuit

On September 25, 2018, while the Agbodjogbe Lawsuit was pending, Al-Sabah filed a related lawsuit against World Business Lenders, LLC ("WBL"), Robert Williams, Uptown Commercial Capital ("Uptown"), Kenneth Williams, Sharestates, and IRM Plaza, LLC ("IRM Plaza").[3] Complaint, *Al-Sabah v. World Bus. Lenders, LLC*, No. SAG-18-2958 (D. Md. Sept. 25, 2018) [hereinafter "the Lender Lawsuit"], ECF 1. Al-Sabah seeks compensatory damages and equitable relief under ten counts: Civil Conspiracy; Aiding & Abetting Fraud; Fraud by Omission; Constructive Fraud; Negligence; "Constructive Trust"; Unjust Enrichment; "Quiet Title/Invalidate Liens on Maryland Properties"; Declaratory Judgment; "Mortgage Fraud/ Conspiracy to Commit Mortgage Fraud in Violation of the Maryland Mortgage Fraud Protection Act"; and "Invalidate New York Mortgage Due to Fraud Under NY Real Prop. Sections 265, 266, and 329." *Id.* ¶¶ 143-96.

---

[3] This Court entered a default judgment in Al-Sabah's favor against Defendants Uptown and Kenneth Williams on February 22, 2019. ECF 39.

Defendants WBL, Sharestates, and IRM filed a Motion for Judgment on the Pleadings on April 2, 2019, and that motion is ripe for decision. *See* ECF 47, 52, 56. However, all proceedings in the Lender Lawsuit were stayed, pending the resolution of the Agbodjogbe Lawsuit. Order, *Al-Sabah v. World Bus. Lenders, LLC*, No. SAG-18-2958 (D. Md. May 14, 2019), ECF 58. The Lender Lawsuit was transferred to this Court's docket on February 29, 2020, and the stay will be lifted contemporaneously with the issuance of this Opinion.

## II.     PLAINTIFFS' DECLARATORY JUDGMENT MOTION

### A.     Legal Standards

Where an "actual controversy within its jurisdiction" exists, the federal Declaratory Judgment Act provides that "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (2018); *see also, e.g.*, *Hogs & Heroes Found., Inc. v. Heroes, Inc.*, 202 F. Supp. 3d 490, 494 (D. Md. 2016). Federal courts sitting in diversity may therefore enter declaratory judgments pursuant to § 2201 if three conditions are met: (1) the complaint alleges an "actual controversy" between the parties "of sufficient immediacy and reality to warrant issuance of a declaratory judgment"; (2) the court has subject matter jurisdiction over the parties, independent of the request for declaratory relief; and (3) the court does not abuse its discretion in exercising jurisdiction. *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004) (citations omitted). The Declaratory Judgment Act does not require courts to issue declaratory relief; "[r]ather, a district court's decision to entertain a claim for declaratory relief is discretionary." *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 421 (4th Cir. 1998) (per curiam); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995).

At the same time, however, the Fourth Circuit has held that a district court must have "good reason" to decline to entertain a declaratory judgment action." *Continental Cas. Co. v. Fuscardo*, 35 F.3d 963, 965 (4th Cir. 1994) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937)). This is because the Declaratory Judgment Act must "be liberally exercised to effectuate the purposes of the statute." *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 (4th Cir. 1994). Thus, a court typically should "entertain a declaratory judgment action within its jurisdiction when it finds that the declaratory relief sought (i) will serve a useful purpose in clarifying and settling the legal relations in issue, and (ii) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* (quoting *Quarles*, 92 F.2d at 325).

**B.     Analysis**

Al-Sabah's requested declaratory relief is narrower than that requested in the Amended Complaint. Now, Al-Sabah seeks:

> (i) entry of a declaratory judgment declaring that Mr. Agbodjogbe and the other defendants acquired the real estate in Baltimore and New York by fraud; and (ii) the imposition of a constructive trust over the real property located at 103 Mt. Wilson Lane, 306-10 N. Howard Street, 5722 York Road, and 325 Fifth Avenue.

ECF 262-1 at 6. Although two other properties were acquired by Defendants, Al-Sabah is not seeking additional declaratory relief. *Id.* at 6 n.6.

Regarding Al-Sabah's first declaratory relief request, the Court agrees with Defendants that no actual controversy remains as to whether Defendants acquired the real properties at issue by fraud. Al-Sabah readily recognizes that the jury "indisputably made this connection in rendering its verdict." ECF 275 at 2; *see also* ECF 262-1 at 8 ("As a result of [the jury's] verdict, it is axiomatic that any assets purchased by Mr. Agbodjogbe – whether in his own name or in the name of his co-defendant entities – with money sent to him by Ms. Al-Sabah were obtained by

6

fraud."). Nonetheless, she argues that a declaratory judgment is needed because the jury's verdict, and the Court's judgment order, "do not yet reflect this fact." ECF 275 at 2-3. While the verdict form and the Order of Judgment may not make this explicit, Al-Sabah is correct that the jury necessarily made such a finding in adjudicating Al-Sabah's two fraud claims against Agbodjogbe, and her civil conspiracy claims against the corporate Defendants. Entering her requested declaratory relief will therefore serve no "useful purpose," because there simply is no "uncertainty, insecurity, [or] controversy" left as to the nature of Defendants' actions. *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 (4th Cir. 1994) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937)). Al-Sabah's first request for declaratory relief will therefore be denied.

Though included in her Motion for Declaratory Judgment, the Court construes Al-Sabah's second request as one for the issuance of equitable relief. Al-Sabah requests that the Court establish a constructive trust over the four enumerated properties, and appoint either herself or an independent third party to oversee the trust. ECF 262-1 at 6, 11. She argues that it is necessary to impose a constructive trust in this case to "remove the properties from the Defendants' control and ensure that the values of those properties are preserved until a final determination is reached." *Id.* at 10.

A constructive trust is a remedy "employed by a court of equity to convert the holder of the legal title to property into a trustee for one who in good conscience should reap the benefits of the possession of said property." *Wimmer v. Wimmer*, 287 Md. 663, 668 (1980). This most commonly arises in situations where property is acquired by fraud, misrepresentation, or some other improper means. *See, e.g.*, *Bowie v. Ford*, 269 Md. 111, 118-19 (1973). The fact that a defendant commits fraud is not enough, alone, to warrant the issuance of a constructive trust: "[i]n

7

the ordinary case, there must be clear and convincing evidence not only of wrongdoing, but also of the circumstances which render it inequitable for the holder of the legal title to retain the beneficial interest." *Wimmer*, 287 Md. at 668. Typically, the plaintiff seeking a constructive trust also "has at some time owned it, or had a valid claim to or against it." *Wooddy v. Wooddy*, 258 Md. 224, 233 (1970). However, Maryland courts are instructed to not use constructive trusts "as a means of attempting to right every wrong." *Wimmer*, 287 Md. at 671. Therefore, the decision to award a constructive trust, like other equitable remedies, "rests in the discretion of the court, to be imposed or denied according to the circumstances of the case." *Starleper v. Hamilton*, 106 Md. App. 632, 640 (1995); *accord Am. Metal Forming Corp. v. Pittman*, 52 F.3d 504, 508 (4th Cir. 1995).

The Court agrees with Al-Sabah that the imposition of a constructive trust is *one* remedy available to plaintiffs who prevail on the merits of a fraud or unjust enrichment claim under Maryland law. *E.g.*, *Wimmer*, 287 Md. at 668. Likewise, the Court agrees that a constructive trust of the kind Al-Sabah currently seeks can be awarded under proper circumstances. *See Kim v. Nyce*, 807 F. Supp. 2d 442, 446-49, 457-58 (D. Md. 2011) (imposing a constructive trust over a portion of a parcel of land's value because the land was obtained, in part, using funds fraudulently obtained from the plaintiffs, even after the plaintiffs received damages for the total amount of money they provided for the purchase of the land), *aff'd in part and rev'd in part on other grounds sub nom.*, *Kim v. Parcel K-Tudo Hall Farm LLC*, 499 F. App'x 313 (2012).

However, the Court disagrees that equity requires the imposition of a constructive trust in this case. Al-Sabah argues that a constructive trust is necessary to preserve the value of the properties, since Agbodjogbe "remain[s] in complete control" of them, and thereby to preserve her ability to collect on the monetary judgment the jury awarded her. ECF 262-1 at 1. Al-Sabah's

concerns are speculative at best, however, because she has not presented evidence suggesting that the four properties at issue are, in fact, deteriorating in condition.

Further, Al-Sabah's attempts to collect on her judgment do not operate in a vacuum. She recognizes in her Motion that there are other third parties, including WBL and IRM Plaza – both of whom are Defendants in the Lender Lawsuit – that hold liens against the properties Al-Sabah seeks to place in a constructive trust. *Id.* at 3 nn.3-4 (stating that there are mortgages on the 103 Mount Wilson Lane, 306-10 North Howard Street, and 5722 York Road properties). The evidence adduced at trial also demonstrated that Agbodjogbe executed a mortgage on the condominium located at 325 Fifth Avenue in New York, New York.

Though Defendants wrongfully own the four properties, stripping Defendants of ownership may have unintended collateral consequences on the mortgage liens held by other entities. Al-Sabah notes in her Opposition to the Proposed Intervenors' Motion that the constructive trust will allow a future court to "sort[] out" her competing interest with these mortgage lien holders' interests. ECF 273 at 10. Quite simply, at least one such "future court" is this Court in the Lender Lawsuit. Based on the claims for relief posited in Al-Sabah's Complaint in the Lender Lawsuit, the Court will necessarily need to determine whether Al-Sabah's judgment liens have priority over the Lender Defendants' mortgages in the relevant properties, and even whether those mortgages are valid under Maryland and New York law. *See* Complaint, *Al-Sabah v. World Bus. Lenders, LLC*, No. SAG-18-2958 (D. Md. Sept. 25, 2018), ECF 1, ¶¶ 143-96. In the Court's view, equity requires that the Court fully address those issues in the context of the Lender Lawsuit, with all interested parties present, without taking any unnecessary action in the Agbodjogbe Lawsuit that may jeopardize any non-party's interest. Given that Al-Sabah already has a valid judgment lien, supported by a *lis pendens* in most cases, Defendants will not be able to transfer or otherwise

encumber the four properties in question. Al-Sabah's concern for ensuring the value of the properties moving forward is therefore insufficient to outweigh the interests of those lenders (or other creditors) not represented here in the Agbodjogbe Lawsuit.[4]

Because Al-Sabah's proposed declaratory relief would serve no "useful purpose," and because her requested constructive trust would be inequitable under the unique facts of this case, the Court will deny Al-Sabah's Declaratory Judgment Motion in its entirety. This Court notes, however, that the instant ruling is made without prejudice to Al-Sabah requesting similar relief in the Lender Lawsuit, if warranted.

### III. DEFENDANTS' MOTION FOR JUDGMENT ON PARTIAL FINDINGS

Defendants have filed a Motion for Judgment on Partial Findings pursuant to Federal Rule of Civil Procedure 52(c). ECF 263. Setting aside the procedural concerns with Defendants' Motion, the grounds for the Motion are nearly indistinguishable from those Defendants asserted in opposing Al-Sabah's Declaratory Judgment Motion. *Compare* ECF 263 at 2-4, 6 *with* ECF 272 at 2, 4-6. Defendants' requested relief in its Motion is for the Court to "decline Plaintiff's request for the issuance of a Declaratory Judgment." Al-Sabah has abandoned the declaratory judgment request made in her Complaint, and relies only upon that contained in her Declaratory Judgment Motion. Accordingly, since the Court has denied Al-Sabah's Declaratory Judgment Motion, the Court will deny Defendants' Motion as moot.

---

[4] Al-Sabah further contends that allowing Defendants to remain in control of the properties at issue "would undermine the jury's verdict," since Agbodjogbe continues to operate Nailah's Kitchen at the 5722 York Road property today. ECF 262-1 at 10 & n.8. It may, in fact, work in Al-Sabah's favor that Nailah's Kitchen continues to operate. Agbodjogbe testified that the restaurant brings in net income on a monthly basis, which might further enable Al-Sabah to collect on her money judgment against him and the other Defendants. Regardless, for the reasons addressed above, the ownership of 5722 York Road will have to be addressed in the Lender Lawsuit, or an appropriate Maryland state court proceeding involving all interested parties.

**IV.     THE PROPOSED INTERVENORS' MOTION FOR EXTENSION OF TIME**

Finally, the Proposed Intervenors seek an extension of time to file a Motion to Intervene in this action (the Agbodjogbe Lawsuit) pursuant to Federal Rule of Civil Procedure 24(a)(2).  The Proposed Intervenors argued that they must be allowed to intervene, because Al-Sabah's requested constructive trust would impede the Proposed Intervenors' ability to protect their interest in the New York condominium property.  ECF 267-1 at 5-6.  Because the Court is denying Al-Sabah's request for the imposition of a constructive trust on its merits, Proposed Intervenors' Motion for Extension of Time is similarly moot.[5]

**V.     CONCLUSION**

For the reasons set forth above, Al-Sabah's Motion for Entry of Declaratory Judgment and Imposition of Constructive Trust, or in the Alternative, Motion to Alter or Amend Final Judgment, ECF 262, is DENIED.  Defendants' Motion for Judgment on Partial Findings, ECF 263, is DENIED AS MOOT.  The Proposed Intervenors' Motion for Extension of Time, ECF 267, is DENIED AS MOOT.  A separate implementing Order is filed herewith.


Dated:  March 4, 2019                                              /s/
                                                              Stephanie A. Gallagher
                                                              United States District Judge

---

[5] In their briefing, the Proposed Intervenors continuously referenced to Al-Sabah's Declaratory Judgment Motion as the "Motion to Strip Interveners' Lien."  *E.g.*, ECF 267 at 1.  Sometimes, a lawyer's use of rhetoric can be powerful.  Other times, it falls flat.  Counsel's use of rhetoric here was patently unnecessary.  Nothing in Al-Sabah's Declaratory Judgment Motion suggested that she was seeking to strip another lienholder of their lien.  The Court has hundreds of motions on its active docket, and references to non-existent motions, solely for rhetorical effect, is not helpful.