IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ALIA SALEM AL-SABAH, | * |
| Plaintiff, | * |
| v. | *    Civil Case No. SAG-17-730 |
| JEAN AGBODJOGBE, *et al.*, | * |
| Defendants. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Defendants Jean Agbodjogbe ("Agbodjogbe"), N&A Kitchen, LLC ("N&A Kitchen"), N&A Kitchen II, LLC ("N&A Kitchen II"), 5722 York Road, LLC ("5722 York Road"), and 9 Jewels, LLC ("9 Jewels") (collectively, "Defendants") filed a Motion pursuant to Fed. R. Civ. P. 60(b) ("the Motion"), seeking relief from a multi-million dollar judgment entered in favor of Plaintiff Alia Salem Al-Sabah ("Al-Sabah").[1]  ECF 315.  Al-Sabah filed an opposition to the Motion, ECF 316, and Defendants filed a reply, ECF 325.  This Court has reviewed the briefing and has determined that no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2018).  For the reasons that follow, Defendants' Motion will be denied.

**I.   FACTUAL BACKGROUND**

This dispute stems from large sums of money Al-Sabah transferred to Agbodjogbe to further certain real estate investments.  After the arrangement broke down, Al-Sabah filed two cases in this Court: *Al-Sabah v. Agbodjogbe*, Civil No. 17-0730-SAG ("the *Agbodjogbe* case"),

---

[1] Defendants also filed a motion to stay the enforcement of Al-Sabah's judgment, pending resolution of this motion.  ECF 319.  Because this motion is now adjudicated, the motion to stay will be denied as moot.

and *Al Sabah v. World Business Lenders, LLC*, Civil No. 18-2958-SAG ("the *IRM Plaza* case"). The *IRM Plaza* case, which seeks relief against several lenders who extended credit to Agbodjogbe in exchange for liens on property Al-Sabah believes she owned, was stayed pending resolution of the *Agbodjogbe* case.

This Court presided over a nine-day jury trial in the *Agbodjogbe* case, commencing on January 21, 2020. At the trial, Defendants were represented by two attorneys: James Sweeting, III, Esq. and Landon M. White, Esq.[2] The trial jury returned a verdict in favor of Al-Sabah against each Defendant, in the amount of $7,641,800 in compensatory damages and $1,000,000 in punitive damages. ECF 256. Following post-trial motions, during which Defendants were represented by their two attorneys, this Court entered an Amended Order of Judgment on April 20, 2020, which reduced the punitive damages award to $250,000 and incorporated an award of attorney's fees in the amount of $3,477.50, making the total judgment $7,895,277.50. ECF 288.

## II.   ANALYSIS

Defendants suggest that they are entitled to relief from the judgment for three primary reasons: (1) they received ineffective assistance from Mr. Sweeting, which they contend is remediable under Fed. R. Civ. P. 60(b)(6); (2) Al-Sabah engaged in fraudulent conduct, which would entitle them to relief under Fed. R. Civ. P. 60(b)(3); and (3) this Court committed error in its handling of a *Baltimore Sun* article about the case and in its ruling on a motion for spoliation

---

[2] Mr. Sweeting and Mr. White are each solo practitioners and are not associated in a single firm. To this day, despite the entry of Mohammed Bamba, Esq. as new counsel for defendants, Mr. Sweeting and Mr. White remain as counsel of record, and have not sought to withdraw, nor have Defendants asked for their withdrawal.

sanctions, which would entitle them to relief under Fed. R. Civ. P. 60(b)(1). Each argument is unpersuasive.[3]

### 1. Rule 60(b)(6): Mr. Sweeting's Conflict of Interest

Defendants first seek relief under the "catch-all" provision of Rule 60(b), which allows the Court to relieve a party from a final judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). While that language sounds expansive on its face, courts have clarified that the catch-all provision is in fact quite narrow, requiring proof of "extraordinary circumstances" warranting its invocation. *See, e.g.*, *Aikens v. Ingram*, 652 F.3d 496, 500 (4th Cir. 2011) ("While this catchall reason includes few textual limitations, its context requires that it may be invoked in only 'extraordinary circumstances' when the reason for relief from judgment does not fall within the list of enumerated reasons given in Rule 60(b)(1)-(5).") (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 n.11, 864 (1988)).

Defendants offer no extraordinary circumstances here. The crux of their argument is that their attorney, Mr. Sweeting, had conflicts of interest because he was representing one of the lenders, IRM Plaza, in the *IRM Plaza* case at the time of this trial, and because he was allowed to use office space in one of Agbodjogbe's buildings that was at issue in the case. ECF 315 at 8-28. They attempt to impose on Al Sabah's counsel and the Court some duty to recognize those

---

[3] Initially, Rule 60(b) states that a motion "must be made within a reasonable time," and, to invoke subsections (1), (2), or (3) "no more than a year after entry of the judgment" being challenged. Al Sabah correctly notes that Defendants delayed much more than necessary before filing this particular motion, since all relevant facts were known at or shortly after the trial. *See* ECF 316 at 13. However, this Court will not reject the motion on timeliness grounds, but instead finds that it fails on its merits for the reasons described above.

potential conflicts and take action. As a result of the alleged conflicts, they suggest that they received "ineffective assistance of counsel" from Mr. Sweeting.[4]

Defendants' contention that Mr. Sweeting's performance amounted to "neglect" or "gross negligence" is a non-starter. ECF 325 at 11-12. Without reaching the particular allegations of any of the purportedly objectionable strategic decisions, Mr. Sweeting appeared every day at trial and litigated against what this Court would fairly characterize as a mountain of adverse evidence. Any disputes between Mr. Sweeting and Defendants regarding his trial performance, any alleged ethical violations he committed, or any independent business arrangement they had regarding 306-310 N. Howard Street, are properly addressed in some other setting, be it a complaint to bar counsel or an independent court action. While the Fourth Circuit has not directly addressed whether Rule 60(b)(6)'s narrow category of "extraordinary circumstances" include ineffective assistance of counsel, it has unequivocally held that there is no right to effective assistance of counsel in civil cases generally. *See Lawler v. Am. Bldg. Contrs., Inc.*, 149 Fed. App'x 131, 133 (4th Cir. 2005) (per curiam) ("[A] litigant in a civil action has no constitutional or statutory right to effective assistance of counsel."); *see also Johnson v. Sunshine House, Inc.*, 546 Fed. App'x 167, 16-69 (4th Cir. 2013) (per curiam) ("Further, insofar as Johnson is challenging the effectiveness of her trial counsel based on counsel's failure to move to substitute the sleeping juror and for a mistrial in

---

[4] Similarly, to the extent Defendants believe that Al-Sabah's counsel or the Court acted in violation of professional standards, they are free to raise those assertions with the appropriate bodies. This Court notes, however, that Al-Sabah's attorney raised the potential conflict of interest with Mr. Sweeting, at the latest, on September 3, 2019. ECF 315-8 at 5. As for the Court, despite Defendants' contention that Judge Ellen Hollander should have recognized the conflict, she presided over both cases during only a narrow four-month window, and during that entire time, the *IRM Plaza* case remained stayed and required no court action. The *IRM Plaza* case was not transferred to this Court until after trial in the instant case had concluded. Days later, this Court entered a show cause order identifying the potential conflict and requiring a response from Mr. Sweeting. *IRM Plaza,* Civil No. 18-2958, ECF 63.

light of the sleeping, claims of ineffective assistance by counsel in a civil action are not sufficient to raise a valid claim for relief on appeal and entitle Johnson to no relief."); *Cheche v. Wittstat Title & Escrow Co., LLC*, 482 Fed. App'x 844, 844 (4th Cir. 2012) (per curiam) ("Further, insofar as Cheche challenges the effectiveness of her trial counsel, allegations of ineffective assistance by counsel in a civil action are not sufficient to raise a valid claim for relief on appeal and entitle Cheche to no relief."); *Green v. Porter*, 80 Fed. App'x 294, 295 (4th Cir. 2003) (per curiam) ("Civil litigants have no protected right to counsel, and as a consequence, any deficiency on counsel's part does not provide a basis for appellate relief."). Given this broad disavowal of civil ineffective assistance claims in general and the narrowness of the Rule 60(b)(6) "extraordinary circumstances" avenue for relief, the Court cannot conclude that alleged ineffective assistance of civil trial counsel, at least of the type alleged here, is an "extraordinary circumstance" warranting relief under Rule 60(b)(6). *See e.g.*, *Siner v. Eastside Comm. Invs., Inc.*, 22 Fed. App'x. 642, 643 (7th Cir. 2001) (rejecting the notion that ineffective assistance of counsel claims "fall under the rubric of Rule 60(b)"); *D'Angelo v. State Farm Fire & Cas. Co.*, 32 Fed. App'x. 604, 605 (2d Cir. 2002) ("An attorney's misconduct only rises to the level contemplated by Rule 60(b)(6) in cases of 'constructive disappearance' or a similar inability to provide adequate representation"); *Teninty v. Green*, Civ. No. 08 C 5287, 2011 U.S. Dist. LEXIS 64889, at *9 (N.D. Ill. June 17, 2011) ("ineffective assistance of counsel is not a proper ground for a Rule 60(b) motion in a civil lawsuit"). Defendants offer no cases suggesting the contrary.

Finally, as Al-Sabah notes, Defendants were represented at trial by a second attorney, Landon White, Esq., who has no formal professional association with Mr. Sweeting. Mr. White played an active role in the trial of the case and is not alleged to have had any personal conflict of interest. Defendants express similar dissatisfaction with Mr. White's trial performance, ECF 325

at 13-14. The fact that Defendants' trial counsel allegedly made mistakes or that flaws can be cited in their tactical decisions with the benefit of 20/20 hindsight does not provide a basis to vacate a valid judgment. Since no attorneys are perfect, a holding to the contrary would subject almost any post-trial judgment to legal challenge, undermining the notion of "extraordinary circumstances."

### 2. Rule 60(b)(3): Al-Sabah's Alleged Fraud

Rule 60(b)(3) allows the Court to relieve a party from a final judgment on the grounds of "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). In order to vacate the judgment, "(1) the moving party must have a meritorious defense; (2) the moving party must prove misconduct by clear and convincing evidence; and (3) [the moving party must show] the misconduct prevented [it] from fully presenting its case." *Schultz v. Butcher*, 24 F.3d 626, 630 (4th Cir. 1994), superseded on other grounds by statute, *Holzhauer v. Golden Gate Bridge, Highway & Transp. Dist.*, Case No. 13-cv-02862-JST, 2015 U.S. Dist. LEXIS 76539, at *11 n.4 (N.D. Ca. June 11, 2015). Where, as here, a Rule 60(b)(3) motion is based on allegedly fabricated evidence, "the evidence alleged to be fraudulent presented in the court must 'go to the heart of the issue'" to warrant vacating a judgment. *Tyson v. Ozmint*, 246 F.R.D. 517, 520–21 (D. S.C. 2007) (quoting *Harris v. Mapp*, 719 F. Supp. 1317, 1324 (E.D. Va. 1989)).

Defendants do not come close to meeting those standards. They offer no "clear and convincing evidence" of fraud or fabrication by Al-Sabah. They suggest that Al-Sabah's credibility was damaged by Agbodjogbe's discovery, two weeks after the trial, of an executed copy of the N&A Member Agreement that differed, in terms of the witness to Al-Sabah's signature, from the copy Al Sabah introduced at trial. ECF 315 at 31-33. In Defendants' view, the discovery

evidences that Al-Sabah lied about which documents she had signed and mailed in hard copy to Agbodjogbe in 2014. *Id.* However, their contention does not constitute "clear and convincing evidence," because an equally plausible if not more compelling explanation for the discrepancy is that Al-Sabah simply misremembered the number and content of the documents that she sent in hard copy from Kuwait with her signature. Indeed, an email sent by Agbodjogbe provides one likely explanation for why there may have been at least two different copies of the N&A Member Agreement in existence, signed at different times and with different witnesses. *See* ECF 316-3 (instructing Al-Sabah to sign an emailed copy of the Agreement for her records and then sign a separate, mailed copy that would arrive later to be mailed back to Defendant). The two versions of the N&A Member Agreement are near-identical, with the exception of the witness signature. Accordingly, Al-Sabah would gain no tactical advantage from falsely testifying that one had not been mailed from Kuwait.

Even if one were to assume that there had been some misconduct with respect to the signed versions of the document, Defendants were in no way prevented from fully presenting their case. They argued at trial, quite vociferously, about which documents had or had not been mailed from Kuwait, that Al-Sabah had signed a Member Agreement agreeing to 50/50 ownership of the assets of N&A Kitchen, and that they had a fully signed agreement to rely upon. The overwhelming evidence at trial, however, related not to the written agreements and when or how they were signed, but to Agbodjogbe's surreptitious transfer of assets out of the title of N&A Kitchen to entities he solely controlled, and to false statements he had made to Al-Sabah over the course of several years. He confessed again and again to lying to Al-Sabah about a wide range of issues including his need for additional funds, her ownership of various properties, and the intended use of monies she sent him, among other topics. In context, then, the N&A Member Agreement is not remotely "at the

heart of the issue" presented to the jury, in light of the abundant evidence of deception by Agbodjogbe and the other Defendants. Given the weight of that evidence unrelated to the fraud tenuously alleged here and the absence of a meritorious defense, granting relief under Rule 60(b)(3) would be inappropriate.

### 3. Rule 60(b)(1): The *Baltimore Sun* Article and the Spoliation Motion

Finally, Defendants essentially seek reconsideration, in the guise of a Rule 60(b)(1) motion, of two of this Court's previous rulings. First, Defendants challenge the Court's handling of a *Baltimore Sun* article, featuring the case, that ran on the last day of the jury trial. Second, Defendants reargue the spoliation motion the Court addressed before trial. Both arguments are unavailing.

First, the arguments are untimely. A "Rule 60(b)(1) motion based upon a legal mistake must be filed within the period for filing an appeal." *Lepore v. Ramsey*, 149 F.R.D. 90, 92 (D. Md. 1993). This Court has already ruled that Defendants did not timely note an appeal in this case, ECF 310 & 311, and the instant Motion was filed well after the time to appeal had expired.

In addition, as to the spoliation motion regarding digital images on Al-Sabah's phone, two judges of this Court reviewed the motion and made pretrial rulings. *See* ECF 151 (ruling by U.S. Magistrate Judge David A. Copperthite); ECF 161 (ruling by U.S. District Judge Ellen L. Hollander). Both judges concluded that Defendants' motion was untimely and also failed on its merits. This Court finds no error in those well-reasoned opinions, such that relief pursuant to Rule 60(b)(1) would be warranted.

Further, in this Court's view, Defendants' contention that this Court erred in its handling of the *Baltimore Sun* article lacks merit. The jury was advised at the beginning of the case not to read or listen to any publicity about the case. *See* ECF 316-8 (Trial Tr. Vol. I at 21:4-8) (initial

instructions to the jury not to "read or listen to anything touching on this case in any way" outside of the courtroom or "to do any research or make any investigation about the case on [their] own."). "Jurors are presumed to understand and follow instructions" from the court. *United States v. Zelaya*, 908 F.3d 920, 930 (4th Cir. 2018). When the newspaper article was published on the last day of the trial, the Court consulted with counsel about the best way to handle the situation, and offered more than once to voir dire the jury panel. ECF 316-13. Ultimately everyone, including Defendants' counsel, agreed that a general reminder to the jury of its duty not to read or listen to any media coverage of the case would be the best course of action. *Id.* (Trial Tr. Vol. IX at 4:10-18). Rule 60(b)(1) therefore provides no basis to vacate the judgment.

### III.   CONCLUSION

For the reasons set forth above, Defendants' Motion for Relief from Judgment, ECF 315, is DENIED, and their Motion to Stay, ECF 319, is DENIED as moot. A separate Order is filed herewith.

Dated: December 14, 2020                              /s/
                                                Stephanie A. Gallagher
                                                United States District Judge